**K.P., a minor by her parent and guardian, S.C., and S.C., in her own right, Plaintiffs,**

v.

**William CORSEY, III, Deptford Township Board of Education, and Deptford Township High School, Defendants.**

Civil Action No. 02–1777 (JEI).

United States District Court, D. New Jersey.

Oct. 30, 2002.

Hockfield, Hasner & Associates, P.A., by Barry J. Hockfield, Esq., Cherry Hill, NJ, for Plaintiffs.

Madden, Madden & Del Duca, by Patrick J. Madden, Esq., Haddonfield, NJ, for Defendants Deptford Township Board of Education· and Deptford Township High School.

## OPINION

IRENAS, District Judge.

Presently before the Court are Plaintiffs' motion for partial summary judgment and Defendant Deptford Township Board of Education's ("Board of Education") motion for summary judgment.[1] For the reasons set forth below, Plaintiffs' motion is denied and Defendant's motion is granted.

### I.

Plaintiff K.P. was a minor and a student attending Deptford Township High School at the time the alleged incident relevant to this case took place. In addition, she was a member of the women's track and field team, coached by Defendant William Corsey, III. On March 27, 1999, Plaintiff K.P. has alleged that Defendant Corsey sexually assaulted and harassed her after track practice.

K.P. alleges that, while she was in Corsey's automobile parked behind some bleachers at the school, Corsey told her that he needed to conduct a "fat test." This "fat test" involved K.P. removing her pants and underwear and pulling up her shirt and bra while Corsey made comments regarding her body type and specific areas of her body. In addition, K.P. alleges that Corsey made physical contact with a private area of her body. Following this encounter, Corsey drove K.P. home in his private car. Defendant Corsey has pled guilty to third degree aggravated sexual contact as a result of this incident,

while not admitting to all of the facts alleged by K.P.[2]

Plaintiff K.P. did not immediately report the incident to any school personnel. Instead, she first told a friend and later her boyfriend about the incident. Almost one year after the encounter with Corsey, on March 16, 2000, the Plaintiff told her mother, Plaintiff S.C., about the events of March 27, 1999. The next morning S.C. accompanied her daughter to school and met with Irvin McFarland, vice principal and director of athletics at the school, to complain about the actions of Corsey. McFarland immediately summoned the principal of Deptford High School, Dr. Joseph Canataro, who then proceeded to call in the assistant superintendent of the Deptford Township school district, Marie Louis.

K.P. informed all those present ·about the incident that had taken place with Corsey the year before. Louis then notified the State of New Jersey Division of Youth and Family Services, at which point the Deptford Township Police Department began an investigation. Corsey had already left the school grounds and did not return. He was suspended with pay on March 21, 2000. Upon his indictment the suspension became without pay. When Corsey pled guilty at his criminal trial he was terminated.

On or about March 27, 2002, Plaintiffs filed their Second Amended Complaint against the Defendants alleging violations of 20 U.S.C. § 1681 ("Title IX"), N.J.S.A. 10:5–1 ("New Jersey Law Against Discrimination"), 42 U.S.C. § 1983, and N.J.S.A. 2A:61B–1. The Board of Education has moved for summary judgment

---

**1.** Deptford Township High School is not a separate legal entity and therefore all references in this Opinion to either the Defendant or to the Board of Education shall by definition include the High School.

**2.** Defendant Corsey did admit that he touched the breast of Plaintiff K.P.

on all counts. Plaintiffs have moved for summary judgment on their New Jersey Law Against Discrimination claims.

## II.

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)).

In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. American Tel. & Tel. Long Lines,* 794 F.2d 860, 864 (3d Cir.1986). The role of the court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248, 106 S.Ct. 2505 (citation omitted).

## III.

### A.

■ Plaintiffs and Defendant have asked for summary judgment on the issue of the Board of Education's liability under the New Jersey Law Against Discrimination ("NJLAD"). In addition, the Defendant has requested summary judgment in its favor regarding the issue of its liability

under Title IX. As the standard for liability under either statute is substantially similar, both will be analyzed together in this Opinion.

The NJLAD has been described as a statute with a goal to "eradicate the cancer of discrimination." *Jackson v. Concord Co.,* 253 A.2d 793, 799, 54 N.J. 113 (1969). While the statute does not specifically deal with the issue of sexual harassment, it does clearly state that it shall be unlawful discrimination for any "superintendent, agent, or employee of any place of public accommodation ... to discriminate against any person in the furnishing thereof ... on account of the ... sex ... of such person." N.J.S.A. 10:5–12(f). Furthermore, the NJLAD has been held to prohibit sexual harassment in an employment context. *Lehmann v. Toys 'R' Us, Inc.,* 626 A.2d 445, 452, 132 N.J. 587 (1993). Under the NJLAD, sexual harassment that leads to a hostile work environment is prohibited. *Id.* at 452 ("[h]ostile work environment sexual harassment ... occurs when an employer or fellow employees harass an employee because of his or her sex to the point at which the working environment becomes hostile."). However, the New Jersey courts have yet to extend the NJLAD's protections against sexual harassment to the public school context.

It is clear that under the NJLAD that the Deptford Township High School is a place of public accommodation and therefore covered by the statute.[3] The question then becomes whether the NJLAD prohibits sexual harassment in schools as it does in the workplace. When presented with an issue of state law that has yet to be definitively interpreted by the New Jersey courts it is the duty of federal courts to predict how the New Jersey Supreme

---

**3.** "A place of public accommodation" is specifically defined to include high schools.

N.J.S.A. 10:5–5(*l*).

Court would interpret the law in similar circumstances, without expanding the law beyond what precedent suggests would be supported by the New Jersey Supreme Court. *Camden County Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.,* 273 F.3d 536, 541 (3d Cir.2001) ("the role of a federal court ruling on a matter of state law . . . is to follow the precedents of the state's highest court and predict how that court would decide the issue presented."); *Huddell v. Levin,* 537 F.2d 726, 733 (3d Cir.1976).

In this case, it is clear from the established precedent of the New Jersey Supreme Court that sexual harassment based on a hostile environment is prohibited in schools under the NJLAD. The New Jersey Supreme Court, in *Lehmann,* established that hostile work environment sexual harassment is prohibited under the NJLAD. 626 A.2d at 452. In addition, the language of the NJLAD specifically applies to high schools. Finally, the New Jersey Supreme Court, in *Jackson,* emphasized that the purpose of the NJLAD was to eradicate discrimination. 253 A.2d at 799.

It is extremely doubtful that the New Jersey Supreme Court, if presented with this issue, would hold that sexual harassment is only prohibited in an employment, and not a school, setting. The right of a student to achieve an education free from sexual harassment is certainly as important as the rights of an employee in a work setting. It is unlikely that the NJLAD would prohibit such harassment in the workplace but not in a place of public accommodation.

When determining a standard for analyzing NJLAD hostile work environment sexual harassment claims the New Jersey Supreme Court noted that it often leans on federal precedent used in interpreting 42 U.S.C.A. § 2000e to § 2000e–17 ("Title VII") claims. *Lehmann,* 626 A.2d at 452–53; *See also Erickson v. Marsh & McLennan Co., Inc.,* 569 A.2d 793, 801–02, 117 N.J. 539 (1990). Title VII, however, is strictly an employment related statute. Therefore, it is helpful to look at how sexual harassment is analyzed under Title IX, a statute which prohibits discrimination based on sex in schools receiving federal funds. 20 U.S.C.A. § 1681(a). Since the New Jersey Supreme Court has used Title VII when interpreting the NJLAD for hostile work environment claims we predict that it would use Title IX when interpreting the NJLAD for hostile school environment claims.

■ Title IX has been interpreted to establish that "a school district can be held liable in damages in cases involving a teacher's sexual harassment of a student." *Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 281, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998); *See also Franklin v. Gwinnett County Public Sch.,* 503 U.S. 60, 74–75, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992).[4] In order to hold a school district liable

---

**4.** In *Franklin v. Gwinnett County Public Schools* the Supreme Court noted that it was partly basing its finding that school districts can be held liable for sexual harassment for the actions of their teachers under Title IX on the precedent established in the case of *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), regarding the liability in employment settings of supervisors for discrimination under Title VII when they sexually harass their employees. 503 U.S. 60, 75, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992). In the *Lehmann* case the New Jersey Supreme Court specifically cited to *Meritor* in determining the standard under the NJLAD for sexual harassment in employment settings. 626 A.2d at 452. It seems logical that the New Jersey Supreme Court would then follow the analysis of the United States Supreme Court in *Franklin* and hold that a school district can be held liable for the actions of its teachers in a hostile school environment sexual harassment action.

under Title IX for the sexual harassment of a student by a teacher there is a very clear standard. There must be actual notice and deliberate indifference on the part of an appropriate person at the school district. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. at 292–93, 118 S.Ct. 1989. The U.S. Supreme Court specifically rejected the use of agency principles, as are used in Title VII cases, when determining the extent of school district liability in Title IX cases. *Id.* at 288–89, 118 S.Ct. 1989.

▮ The absence in a school district of a strong sexual harassment policy might indicate deliberate indifference. However, in this case the school district had a very specific policy prohibiting sexual harassment and discussed the subject during teacher training seminars. Likewise, deliberate indifference might be inferred from inaction following a complaint of harassment. But here Deptford Township High School's response to Plaintiff's complaint was swift and decisive. Nor can it be said that the Board of Education had prior notice of Corsey's undesirable proclivities.

No person working for the school or the district had any previous warning of Corsey's behavior, nor had there been any previous complaints against him. Plaintiffs assert that a complaint made years earlier that Corsey was wearing pants that were too tight and a warning from the athletic director to Corsey about driving students in his private automobile should have been enough to put the school district on notice. However, the complaint about the pants involved Corsey wearing spandex running pants, certainly an outfit that a track coach might wear, and did not in any way suggest that he might sexually harass or assault a student. The warning about the car was almost surely given in order to limit liability in the event of an accident. In fact, the letter to Corsey

even mentioned the possibility of such liability. The school district simply did not have any reason to think that Corsey might sexually harass one of his students.

More importantly, once the district did learn about Corsey's behavior it acted appropriately. Corsey was almost immediately suspended and never returned to the school. The district also informed the proper authorities upon learning of K.P.'s allegations. Once the district had actual knowledge of Corsey's behavior it acted with the opposite of deliberate indifference by promptly suspending Corsey and reporting the allegations. In addition, the plaintiffs' allegations under the NJLAD must also fail as there is no evidence that anyone at the school failed to adequately protect students from sexual harassment or failed to act appropriately once they became aware of the allegations.

**B.**

▮ Plaintiffs also claim that the Board of Education has violated their 42 U.S.C. § 1983 rights. Section 1983 provides for the imposition of liability on any person who, acting under color of state law, deprives another of rights, privileges, or immunities secured by the Constitution or laws of the United States. 42 U.S.C. § 1983. The statute is not a source of substantive rights, but merely provides "a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). To assert a claim successfully under § 1983, a plaintiff must allege a violation of a right secured by the Constitution and laws of the United States and that the alleged deprivation was committed by a person "acting under color of State law." *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Flagg Bros. Inc. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978);

*Shaw v. Strackhouse,* 920 F.2d 1135, 1142 (3d Cir.1990).

The Plaintiffs have clearly made a proper claim against Corsey under § 1983. First, he acted under color of state law since the acts of harassment occurred in the course of his employment by the Board of Education. Second, it has been established that sexual harassment of students in school is a constitutional violation of the student's due process right to be free from "unjustified intrusions on personal security." *Stoneking v. Bradford Area Sch. Dist.,* 882 F.2d 720, 726–27 (3d Cir.1989) (quoting *Ingraham v. Wright,* 430 U.S. 651, 673, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977)).

Whether the Board of Education may be held liable under § 1983 for Corsey's actions is a different matter, however, since the theory of respondeat superior is inapplicable. *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 691–94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988) (citations omitted). Thus, in order to assert a claim against the Board of Education, Plaintiffs must allege that a constitutional deprivation resulted from an official custom or policy or, alternatively, from the actions of an official with "final authority to establish municipal policy." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480–81, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).

In this case it is obvious that there is no custom or policy of the school district or the school that led to the sexual harassment of K.P. In fact, the school had a policy to prevent the sexual harassment of its students, and the school had in place the procedures that allowed it to quickly report the harassment to the authorities and suspend the teacher. It is also clear that Corsey was not an employee with policy making authority. He was not a member of the administration of the school and, as track coach, had authority similar to that of any teacher in the school. None of these positions carry policy making authority. Therefore, under § 1983 the Board of Education cannot be liable for the sexual harassment of one of its teachers or coaches.

### C.

Plaintiffs final claim against the Board of Education is under N.J.S.A. 2A:61B–1, the statute which creates a civil cause of action for sexual abuse. Defendant Board of Education has requested summary judgment on this issue, and the Plaintiffs in their reply brief to the Court agree that any violation of this statute by Corsey is not cognizable against the Board of Education. As there is no dispute over this issue, the Court will grant the Board of Education's request for summary judgment.

### IV.

For the reasons set forth above, Plaintiffs' motion for partial summary judgment will be denied. Defendant Board of Education's motion for summary judgment on all issues will be granted.